Electronically Filed
Intermediate Court of Appeals
CAAP-18-0000691
27-FEB-2020
07:51 AM

NO. CAAP-18-0000691

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

STATE OF HAWAI'I, Plaintiff-Appellee/Cross-Appellant,
v.
LORRIN Y. ISHIMINE, Defendant-Appellant/Cross-Appellee

APPEAL FROM THE CIRCUIT COURT OF THE SECOND CIRCUIT
(CASE NO. 2PC161000679(2))

SUMMARY DISPOSITION ORDER
(By: Ginoza, Chief Judge, Fujise and Leonard, JJ.)

Defendant-Appellant/Cross-Appellee Lorrin Y. Ishimine

(**Ishimine**) appeals from the July 17, 2018 Judgment; Conviction

and Sentence; Notice of Entry (**Judgment**), which was entered by

the Circuit Court of the Second Circuit (**Circuit Court**)[1] in favor

of Plaintiff-Appellee/Cross-Appellant the State of Hawai'i

(**State**). After a jury trial, Ishimine was convicted of

Kidnapping, in violation of Hawaii Revised Statutes (**HRS**) § 707-

720(1)(d) (2014),[2] arising out of an August 17, 2016 incident of

---

[1] The Honorable Peter T. Cahill presided.

[2] HRS § 707-720 states, in pertinent part:

§ 707-720 **Kidnapping.** (1) A person commits the
offense of kidnapping if the person intentionally or

(continued...)

alleged abuse involving Ishimine and his girlfriend.  Ishimine also challenges the Circuit Court's:  (1) July 19, 2018 Findings of Fact and Conclusions of Law; Order, granting in part and denying in part Ishimine's July 26, 2017 Motion to Suppress Evidence; and (2) March 19, 2018 oral ruling, permitting the State to elicit a purported hearsay statement during trial.

The State cross-appeals from the Judgment, challenging the Circuit Court's:  (1) Order re Motion to Suppress; (2) exclusion of certain evidence offered by the State; and (3) the Circuit Court's July 24, 2018 Order Granting [Ishimine]'s Oral Motion to Strike a Portion of the Pre-Sentence Investigation Report (**Order re PSI Report**).

Ishimine asserts three points of error on appeal, contending that:  (1) the Circuit Court erred in denying, in part, his Motion to Suppress; (2) the Circuit Court abused its discretion by allowing the State to adduce testimony regarding certain statements made by Rhonda Kosi (**Kosi**); and (3) there is insufficient evidence to support his conviction.

On cross-appeal, the State asserts four points of error, contending that the Circuit Court erred in:  (1) granting,

---

[2](...continued)
        knowingly restrains another person with intent to:
                . . . .
                (d)    Inflict bodily injury upon that person or
                       subject that person to a sexual offense;
                . . . .
                (2)    Except as provided in subsection (3), kidnapping
        is a class A felony.
                (3)    In a prosecution for kidnapping, it is a defense
        which reduces the offense to a class B felony that the
        defendant voluntarily released the victim, alive and not
        suffering from serious or substantial bodily injury, in a
        safe place prior to trial.

in part, Ishimine's Motion to Suppress; (2) excluding the transcript of the complainant's preliminary hearing testimony; (3) excluding Officer Bethany Cravalho-Parker's testimony as to her observations of the complainant and the photographs depicting Officer Cravalho-Parker's observations; and (4) granting Ishimine's oral motion to strike a portion of the PSI Report.

Upon careful review of the record and the briefs submitted by the parties, and having given due consideration to the arguments advanced and the issues raised by the parties, we resolve the parties' points of error as follows:

I.

(1)   Ishimine contends that the Circuit Court erred in denying, in part, his Motion to Suppress because the Maui Police Department (**MPD**) officers violated his constitutional rights through their allegedly illegal warrantless entries into his home and bedroom.   It is undisputed that Ishimine possessed a reasonable expectation of privacy in both his house and bedroom, that the police entries were constitutional "searches," and that the entries were made without a warrant or consent.   Ishimine argues that the entries were presumptively illegal, unless an exception to the warrant requirement applies, and that the "only two conceivable exceptions" — consent or exigent circumstances — are not applicable.

"Under Hawai'i law, any warrantless search of a constitutionally protected area is presumptively unreasonable, unless 'the government has probable cause to search and exigent circumstances exist necessitating immediate police action.'"

State v. Ramos-Saunders, 135 Hawaiʻi 299, 306, 349 P.3d 406, 413 (App. 2015) (quoting State v. Pulse, 83 Hawaiʻi 229, 245, 925 P.2d 797, 813 (1996)). Similarly, "law enforcement officers may not enter the home of a suspect to effect his arrest, without his consent or without prior judicial authorization, in the absence of exigent circumstances." State v. Lloyd, 61 Haw. 505, 510-11, 606 P.2d 913, 917 (1980). As the Hawaiʻi Supreme Court has explained:

> [A]n exigent circumstance exists when the demands of the occasion reasonably call for an immediate police response. More specifically, it includes situations presenting an immediate danger to life or serious injury or an immediate threatened removal or destruction of evidence. However, the burden, of course, is upon the government to prove the justification . . . , and whether the requisite conditions exist is to be measured from the totality of the circumstances. And in seeking to meet this burden, the police must be able to point to specific and articulable facts from which it may be determined that the action they took was necessitated by the exigencies of the situation.

Ramos-Saunders, 135 Hawaiʻi at 306, 349 P.3d at 413 (quoting State v. Jenkins, 93 Hawaiʻi 87, 102, 997 P.2d 13, 28 (2000)) (format altered).

Here, the Circuit Court's findings of fact (**FOFs**) included, *inter alia*:

> 1. On August 17, 2016, at about 1:30 p.m., Officer Victor Marmolejos Santana [(**Officer Santana**)], who was off duty at that time, saw a vehicle drive to and park at a two-story residence at 471 Liholiho St.
>
> 2. After the vehicle parked, Officer Santana saw [Ishimine] get out of the driver's seat; he heard [Ishimine] yelling at the passenger and making threatening hand gestures toward her; he saw [Ishimine] drag a woman out of the front passenger seat of the vehicle; the woman was screaming for help and crying; the woman was trying to get away from [Ishimine], but [Ishimine] dragged her up the stairs and into the residence at 471 Liholiho St., while the woman continued to scream for help and to struggle to get away from him.
>
> 3. Officer Santana did not see [Ishimine] holding any weapons.

4. Officer Santana called 911 at about 1:34 p.m. and described what he saw, and stationed himself outside the 471 Liholiho St. residence waiting for other officers to arrive.

5. Officer Santana heard no further disturbance coming from inside the residence.

6. At about 1:46 p.m., Officers Alex Pagan, Keola Wilhelm, and Nephi Laga arrived; at about 1:48 p.m. Officer Bethany Cravalho-Parker arrived.

7. All of the officers proceeded up the stairs to the second level sliding glass door, where they were met by [Ishimine]'s sister, [Kosi], who denied them entry.

. . . .

10. The officers found [Ishimine]'s bedroom door to be locked. They "knocked and announced" several times, but there was no response from within. The officers could not hear anything from within [Ishimine]'s bedroom.

11. Officer Wilhelm kicked [Ishimine]'s bedroom door open. Officers then saw [Ishimine] holding a woman from behind her, while both were seated on a bed. The woman was crying. Officer Wilhelm ordered [Ishimine] to let the woman go and to exit the bedroom. [Ishimine] complied.

Ishimine challenges FOFs 2 and 5, arguing that: (1) Officer Santana's observations of Ishimine pointing at the complainant do not support a finding that he had made "threatening hand gestures"; (2) Officer Santana did not testify that he saw Ishimine enter the residence with the complainant; and (3) not only Officer Santana, but none of the other officers heard any sounds of a disturbance from inside the residence.

At the hearing on Ishimine's Motion to Suppress, Officer Santana testified that on August 17, 2016, he was off-duty in an apartment on the third floor of a building across from 471 Liholiho Street, when he heard the sound of a speeding vehicle and of a muffler hitting the asphalt. He looked out the window and saw a car moving at a "high rate of speed" and then park in front of 471 Liholiho Street. He testified that he had a clear and unobstructed view of the vehicle from about forty to

fifty yards away. He next observed a male driver, whom he identified during the hearing as Ishimine, exit the vehicle, go to the passenger side, open the door, and "basically drag a female" out of the car. Officer Santana could not see exactly where on her body Ishimine grabbed her to remove her from the vehicle. Officer Santana testified that he then observed Ishimine screaming at the woman and making pointing hand gestures toward her, acting "very aggressive." The woman was screaming, crying, and yelling for help, kicking her feet as though she was in distress and "did not want to be near this person." She appeared to be trying to get away and telling Ishimine to leave her alone. Officer Santana did not see Ishimine punch the female, and the female did not appear to be bleeding or have any visible injuries.

Officer Santana testified that Ishimine had "grabbed her by the back" and was walking backwards, dragging her up the stairs and into the residence, while the female continued to yell and scream and try to get away. On cross-examination, Officer Santana testified that he did not have a visual of the front door of the residence from his vantage point and was not actually able to see Ishimine and the female when they were on the second-floor lanai.

"[A]s trier of fact, the trial judge is free to make all reasonable and rational inferences under the facts in evidence, including circumstantial evidence." State v. Matavale, 115 Hawai'i 149, 158, 166 P.3d 322, 331 (2007) (quoting State v. Batson, 73 Haw. 236, 248-49, 831 P.2d 924, 931 (1992)). Based on

the testimony that Ishimine was yelling at the complainant and acting aggressively toward her, followed immediately by violently dragging her up the stairs, the Circuit Court's finding that he was making threatening gestures toward her is not clearly erroneous. Additionally, Officer Santana's observation of Ishimine and the complainant at the top of the stairs near the entrance to the residence, combined with his observations that the complainant's screams ceased once they reached where the entrance was and that the vehicle they arrived in remained in front of the residence, are sufficient to support the reasonable inference that they had entered, and remained inside, the residence. Finally, a finding that Officer Santana did not hear any disturbances coming from inside the residence might be incomplete for failing to mention that the other officers also did not hear any such sounds; however, in context, it is not clearly erroneous based on Officer Santana's testimony that he no longer heard any sounds of a confrontation after his initial observations. Accordingly, the challenged FOFs are not clearly erroneous and the remaining FOFs are binding on this court. See Kawamata Farms, Inc. v. United Agri Products, 86 Hawai'i 214, 252, 948 P.2d 1055, 1093 (1997) ("If a finding is not properly attacked, it is binding; and any conclusion which follows from it and is a correct statement of law is valid.") (citation and internal quotation marks omitted).

Ishimine also challenges the following COLs:

5. The facts and circumstances within Officer Santana's knowledge and which he, himself, had observed were sufficient in themselves to warrant a person of reasonable caution in the belief that the crime of Kidnapping had been,

and was being, committed. Therefore, Officer Santana was authorized to arrest [Ishimine] without a warrant, because he had probable cause to believe that [Ishimine] had committed, and was committing the crime of Kidnapping in his presence.

. . . .

6. In these circumstances, then, according to the reasonably trustworthy information that Officer Wilhelm had received from Officer Santana before he kicked open the locked bedroom door, the crime of Kidnapping had been, and was continuing to be, committed behind that locked door. Therefore, exigent circumstances existed; that is, the demands of that occasion called for immediate police response to prevent imminent danger to the life [of] the woman that [Ishimine] had dragged into that residence. The responding officers were not required to fulfill the "knock and announce" requirements of section 803-11 before taking action.

7. Therefore, [Ishimine]'s Motion to Suppress Evidence is granted in part and denied in part: The instant motion is granted as to any evidence, photographs, diagrams or observations made within the residence at 471 Lilholiho St. outside of [Ishimine]'s bedroom, because the exigency applied only to [Ishimine]'s bedroom. Specifically, State's Exhibits 11, 12, 13, 14, 15, 16, 17, and 59 are suppressed. The instant motion is denied as to all other evidence and exhibits.

Ishimine challenges these COLs on the basis that Officer Santana's observations did not provide probable cause that the crime of kidnapping was being committed and that, based on all the officers' observations that there were no sounds of disturbances or cries for help coming from the residence to indicate that an offense was continuing to occur, there were no exigent circumstances to justify the warrantless entries into either Ishimine's house or bedroom.

Ishimine's argument is without merit. At the time of the officers' entry into Ishimine's residence, Officer Santana had — only minutes prior — observed Ishimine yelling at the complainant, acting aggressively, and dragging her backwards up an entire flight of stairs while she kicked, cried, and screamed for help, and attempted to escape his hold. These observations

constituted reasonably trustworthy information sufficient in themselves to warrant a person of reasonable caution to believe that the offense of kidnapping had been committed and thus gave rise to probable cause. See State v. Navas, 81 Hawai'i 113, 116, 913 P.2d 39, 42 (1996).

Moreover, it is not unreasonable to infer from those observations that the complainant was in imminent danger of serious injury or of danger to her life at that moment. Additionally, upon reaching the threshold to the home, the officers' attempts to obtain information from Kosi were met with equivocation and responses that belied Officer Santana's recent observations. Finally, the situation was now characterized as a domestic dispute based on Kosi's disclosure that the complainant was Ishimine's girlfriend, which heightened the urgency of the situation. See, e.g., State v. Wilson, 141 Hawai'i 385, 393 n.7, 410 P.3d 865, 874 n.7 (App. 2017) (citing cases from various jurisdictions and acknowledging the volatility of domestic abuse situations). Viewing the totality of the circumstances, the State met its burden of establishing specific and articulable facts to support a determination that the action taken by the police was necessitated by the exigencies of the situation. See Ramos-Saunders, 135 Hawai'i at 306, 349 P.3d at 413. Moreover, the exigency did not dissipate as the officers approached the locked bedroom and were met with no verbal response from either Ishimine or the complainant upon knocking, warranting their forced entry into the bedroom.

Ishimine further argues that Officer Santana's delay in entering the house while he waited for dispatch together with the responding officers' reluctance to "storm the house" upon their arrival evidences the officers' recognition that there was no exigency calling for immediate action. However, this court considers the totality of the circumstances in assessing whether a sufficient exigency permitted a warrantless entry; whether the police paused momentarily upon arrival — apparently to confirm the accuracy of the dispatch information, ensure officer safety, discern the current status of the exigency, and attempt to obtain consent to enter — is not, on its own, enough to outweigh Officer Santana's observations and the other factors supporting the conclusion that the complainant was, at that moment, subject to restraint, imminent harm, or other violence.

Ishimine also purports to rely on this court's decision in State v. Vinuya, 96 Hawai'i 472, 32 P.3d 116 (App. 2001), as "instructive" in this case. However, while Ishimine describes Vinuya in detail, he does not present any cogent argument that Vinuya dictates a lack of exigency here. In any event, Vinuya is materially distinguishable. In that case, this court determined that an initial exigency existed, relying, in part, on "the fact that there was at least one known victim . . . and the imminent threat of additional violence should the police fail to immediately secure [the defendant]'s person." Id. at 489, 32 P.3d at 133. While this court ultimately concluded that the exigency had dissipated at some point prior to the warrantless entry four hours later, id. at 490, 32 P.3d at 134, there is

10

nothing in the instant case to indicate that the exigency arising out of Officer Santana's observations of Ishimine restraining Gonzalez had abated in the twelve to fifteen minutes that had elapsed prior to their warrantless entry into the residence and bedroom. Cf. Ramos-Saunders, 135 Hawai'i at 307, 349 P.3d at 414 (no exigency existed where the officers "never saw or heard a third person [in the dwelling] nor did they witness any signs of a struggle that would indicate that someone was in danger or in need of immediate police intervention").

Based on the totality of the circumstances, the Circuit Court did not err in concluding that the exigent circumstances existed, i.e., that the demands of the occasion called for immediate police response to prevent imminent danger of serious harm to the complainant, and that probable cause existed to justify the warrantless entry. Accordingly, Ishimine's first point of error is rejected.

(2) Ishimine contends that the Circuit Court abused its discretion in allowing the State to adduce evidence of Kosi's statements to the MPD officers that Ishimine was not at the house and that he and the complainant had been there earlier but had left. Ishimine contends that this error violated his constitutional right to confront adverse witnesses, as protected by article I, section 14 of the Hawai'i Constitution and the sixth amendment to the United States Constitution.

However, the State did not seek to use these statements for the truth of the matter asserted, but to establish that the complainant was not released in a safe place, as Ishimine's

11

sister was willing to cover for him with the police. The statement therefore did not implicate Ishimine's confrontation rights. State v. Konohia, 106 Hawai'i 517, 525-26, 107 P.3d 1190, 1198-99 (App. 2005) ("Because the statements were not offered for a hearsay purpose, the admission of the statements did not violate Konohia's confrontation rights.") (citing Tennessee v. Street, 471 U.S. 409, 413-14 (1985)), cert. denied, 107 Hawai'i 65, 109 P.3d 706 (2005).

Ishimine asserts that the State "abandoned this argument in its closing argument," and that the State's claimed justification for admitting the statement is therefore not a basis for its admissibility. However, the Circuit Court twice instructed the jury that the statements were not to be considered for the truth of the matter asserted and, "[a]s a rule, juries are presumed to . . . follow all of the trial court's instructions." State v. Knight, 80 Hawai'i 318, 327, 909 P.2d 1133, 1142 (1996) (quoting Sato v. Tawata, 79 Hawai'i 14, 21, 897 P.2d 941, 948 (1995)) (internal quotation marks omitted). That the State ultimately conceded it could not establish the complainant was not released in a safe place does not invalidate the court's limiting instruction that the statements were not to be considered for a hearsay purpose.

Ishimine alternatively argues that Kosi's statement should have been excluded as unduly prejudicial because they "created the unmistakable inference that [she] was deliberately lying and covering for [Ishimine] because he was engaged in some sort of illegal activity." However, as part of the same

12

argument, Ishimine asserts that Kosi ought to have been given the opportunity to explain her statement, including the potential explanation that she truly believed Ishimine and the complainant had left the house at the time she made the statement. If such further explanation would have led to an opposing inference, the statement does not give rise to the "unmistakable" inference that she was lying to cover for Ishimine's criminal behavior. Accordingly, the testimony with respect to Kosi's statements was not unduly prejudicial. Moreover, it does not appear that Ishimine objected to the testimony based on it being unduly prejudicial pursuant to Hawai'i Rules of Evidence Rule 403 and raised the issue only on appeal. Generally, if an argument is not raised at trial, it is waived on appeal. See, e.g., State v. Moses, 102 Hawai'i 449, 456, 77 P.3d 940, 947 (2003).

For these reasons, we reject Ishimine's argument that his conviction should be vacated because the Circuit Court abused its discretion in allowing the MPD officers to provide this limited testimony regarding Kosi's statements.

(3) Ishimine contends that the State failed to present sufficient evidence to support Ishimine's conviction for kidnapping. Specifically, Ishimine argues that the State did not present substantial evidence of Ishimine's intent to inflict bodily injury upon the complainant, because Officer Santana's observations did not include seeing Ishimine inflict or attempt to inflict any harm upon the complainant and there was no subsequent indicia of any harm being inflicted upon her, such as

13

yelling, screaming, cries for "help" or "stop" coming from the house.

"[A]n appellate court will not overturn a conviction by a jury if viewing the evidence in the light most favorable to the prosecution, there is substantial evidence to support the conclusion of the trier of fact." Matavale, 115 Hawai'i at 158, 166 P.3d at 331 (quoting State v. Moniz, 92 Hawai'i 472, 475, 992 P.2d 741, 744 (App. 1999)) (brackets and internal quotation marks omitted). "The test on appeal is not whether guilt is established beyond a reasonable doubt, but whether there was substantial evidence to support the conclusion of the trier of fact." Id. at 157-58, 166 P.3d at 330-31. Furthermore, this court will "give due deference to the right of the trier of fact 'to determine credibility, weigh the evidence, and draw reasonable inferences from the evidence adduced.'" State v. Agard, 113 Hawai'i 321, 324, 151 P.3d 802, 805 (2007) (quoting In re Doe, 107 Hawai'i 12, 19, 108 P.3d 966, 973 (2005)).

With respect to intent, "[t]he law permits an inference of the requisite intent from evidence of the words or conduct of the defendant." State v. Flores, 131 Hawai'i 43, 54, 314 P.3d 120, 131 (2013) (quoting State v. Stuart, 51 Haw. 656, 657, 466 P.2d 444, 445 (1970)) (internal quotation marks omitted). "The mind of an alleged offender may be read from his acts, conduct and inferences fairly drawn from all the circumstances." State v. Eastman, 81 Hawai'i 131, 141, 913 P.2d 57, 67 (1996). It is ultimately "not necessary for the prosecution to introduce direct evidence of a defendant's state of mind in order to prove that

the defendant acted intentionally[.]"  Id. at 140-41, 913 P.2d at 66-67 (citing State v. Rushing, 62 Haw. 102, 106, 612 P.2d 103, 106-07 (1980)).

In order to sustain a conviction against Ishimine for kidnapping, the State was required to present substantial evidence that he intentionally or knowingly restrained the complainant with intent to, *inter alia*, inflict bodily injury upon her.  HRS § 707-720(1)(d).  The evidence at trial relevant to these elements included testimony regarding Officer Santana's observations that Ishimine violently and aggressively dragged the complainant backwards up the stairs and into his dwelling despite her screams for help and attempts to break free of his restraint as well as testimony that the complainant was discovered in Ishimine's hold as he held a hand over her mouth, and that she was crying and looked very afraid.

Viewing this evidence in the light most favorable to the prosecution, we conclude that the State presented sufficient evidence to sustain Ishimine's kidnapping conviction.

II.

As the Hawai'i Supreme Court has recognized, "[i]f [a defendant]'s convictions are affirmed, the Prosecution will have received its requested remedy — conviction of the Defendant. Because there would no longer be an outstanding remedy, the entire cross-appeal would be moot."  State v. Fukusaku, 85 Hawai'i 462, 490, 946 P.2d 32, 60 (1997).  In light of the above conclusions with respect to Ishimine's points of error and this court's affirmance of his conviction, the first three issues

raised in the State's cross-appeal are moot. See State v.
Westerman, CAAP-16-0000427, 2019 WL 1238849, *8 (Haw. App. Mar.
18, 2019) (mem. op.).

However, with respect to the State's fourth point of
error challenging the Circuit Court's order to the Hawaii
Paroling Authority (**HPA**) not to consider the stricken portion of
the PSI Report, the public interest exception to the mootness
doctrine arguably applies. See State v. Kiese, 126 Hawaiʻi 494,
509-10, 273 P.3d 1180, 1195-96 (2012) (recognizing the
applicability of the public interest exception based on "(1) the
public or private nature of the question presented, (2) the
desirability of an authoritative determination for future
guidance of public officers, and (3) the likelihood of future
recurrence of the question" (quoting Doe v. Doe, 116 Hawaiʻi 323,
327, 172 P.3d 1067, 1071 (2007)); State v. Cullen, 86 Hawaiʻi 1,
13, 946 P.2d 955, 967 (1997) (entertaining the State's cross-
appeal that challenged the circuit court's decision to release
the defendant on bail pending appeal of his conviction, despite
having affirmed the conviction).

The State argues that the Circuit Court's order
"frustrates the . . . statutory duty of [the] HPA" under HRS §
706-669(2) (2014)[3] in setting minimum terms and prevents the

---

[3]     HRS § 706-669 provides, in pertinent part:

§ **706-669 Procedure for determining minimum term of
imprisonment.** (1) When a person has been sentenced to an
indeterminate or an extended term of imprisonment, the
Hawaii paroling authority shall, as soon as practicable but
no later than six months after commitment to the custody of
the director of the department of [public safety] hold a
hearing, and on the basis of the hearing make an order
(continued...)

HPA's necessary consideration of Ishimine's life before incarceration, as well as his degree of propensity toward criminal activity.

HRS § 706-604(2) (2014)[4] plainly provides the sentencing court with the authority to "amend or order the amendment of the report upon finding that any correction, modification, or addition is needed." See also Finnigan v. State, No. 30629, 2011 WL 3848466, *2 (Haw. App. Aug. 31, 2011) (SDO) ("[I]t is the court, not HPA, that is statutorily charged with overseeing the completion of the pre-sentence investigation report."). Moreover, HRS § 706-604(4) requires in certain

---

[3] (...continued)
fixing the minimum term of imprisonment to be served before the prisoner shall become eligible for parole.
    (2)  Before holding the hearing, the authority shall obtain a complete report regarding the prisoner's life before entering the institution and a full report of the prisoner's progress in the institution. The report shall be a complete personality evaluation for the purpose of determining the prisoner's degree of propensity toward criminal activity.

[4]  HRS § 706-604 provides, in pertinent part:

    § 706-604  Opportunity be heard with respect to sentence; notice of pre-sentence report; opportunity to controvert or supplement; transmission of report to department.
        . . . .
    (2)  The court shall furnish to the defendant or the defendant's counsel and to the prosecuting attorney a copy of the report of any pre-sentence diagnosis or psychological, psychiatric, or other medical examination and afford fair opportunity, if the defendant or the prosecuting attorney so requests, to controvert or supplement them. The court shall amend or order the amendment of the report upon finding that any correction, modification, or addition is needed and, where appropriate, shall require the prompt preparation of an amended report in which material required to be deleted is completely removed or other amendments, including additions, are made.
        . . . .
    (4)  If the defendant is sentenced to imprisonment, a copy of the report of any pre-sentence diagnosis or psychological, psychiatric, or other medical examination, which shall incorporate any amendments ordered by the court, shall be transmitted immediately to the department of public safety.

17

circumstances that the sentencing court submit the PSI Report, with incorporated amendments, to the Department of Public Safety, to which the HPA is administratively attached. See HRS § 26-14.6(c). Thus, it appears that, to the extent the Circuit Court orders any amendment to the PSI Report for sentencing purposes, these amendments are to be reflected in the same PSI Report provided to the HPA. Where the amendment takes the form of a stricken portion, it follows that the portion no longer forms part of the PSI Report and cannot, by definition, be considered by the HPA. Black's Law Dictionary 1720 (11th ed. 2019) (defining "strike" as "[t]o expunge, as from a record").

Consequently, the Circuit Court's Order re PSI Report does not purport to prohibit the HPA from considering any of the information initially included in the report. Rather, it orders, albeit superfluously, that the HPA utilize the PSI Report as is, inclusive of its incorporated amendments, recognizing that the information contained in the stricken portion may be available from other sources. While we recognize that "sentencing courts have no power to dictate parole decisions of the [HPA] nor to supervise the performance of its duties," State v. Gaylord, 78 Hawai'i 127, 154 n. 51, 890 P.2d 1167, 1194 n. 51 (1995), the Circuit Court's Order re PSI Report does not infringe on the HPA's paroling authority. Accordingly, we conclude that the State's fourth point of error is without merit.

For these reasons, the Circuit Court's July 17, 2018 Judgment is affirmed.

DATED: Honolulu, Hawai'i, February 27, 2020.

On the briefs:

Alen M Kaneshiro,
for Defendant-Appellant/
 Cross-Appellee.

Emlyn H. Higa,
Deputy Prosecuting Attorney,
County of Maui,
for Plaintiff-Appellee/
 Cross-Appellant.

Presiding Judge

Associate Judge

Associate Judge